IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | )  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Action Nos. 09-273-03 and 10-021-02 |
| | ) |
| ERIN HOUSE, | ) |
| Defendant. | ) |
| | ) |

# OPINION

**CONTI, Chief District Judge.**

Defendant Erin House ("defendant") was charged in a September 2009 indictment with participating in a cocaine distribution conspiracy. (ECF No. 1.)[1] About a year later, after pleading not guilty to both the original and superseding indictments, defendant filed his first motion to dismiss the indictment or suppress evidence based upon the government's alleged unlawful interception of push-to-talk ("PTT") communications to and from certain cellular telephone devices, and warrantless search of his tractor truck. (ECF No. 313.) Defendant supplemented his motion several times. (ECF Nos. 718, 723, 730.) The court held numerous hearings on defendant's motions between April 7, 2010 and April 25, 2014. (09-273, ECF Nos. 259, 356, 458, 537, 556, 769, 640, 770, 822, 821, 756; 10-021, ECF No. 164.)

---

[1] All citations to the record will refer to the docket of the first-filed case, Criminal Action Number 09-273, unless otherwise specified.

On July 8, 2015, the court issued an opinion setting forth fifty findings of fact and sixty conclusions of law, and denying each of defendant's motions. (ECF No. 844.)[2] At a July 15, 2015 status conference with the court, defendant stated his intention to file a motion to reconsider the court's ruling, and to file a motion to compel additional discovery evidence. The court set a schedule for the filing of those motions, and entered an order setting jury selection and trial for November 2, 2015. (Id.; ECF No. 848.) Between July 24, 2015 and August 18, 2015, defendant filed three motions: (1) a motion to compel discovery; (2) a motion to alter and amend judgment; and (3) a motion for sanctions. (ECF Nos. 850, 852, 854.) For the reasons set forth below, each motion will be denied.

**I. The Motion to Compel**

Defendant seeks an order, pursuant to Federal Rule of Criminal Procedure 16, compelling the government to produce various items related to the Title III wiretap recordings made of former co-defendant Michael Dwayne Blackwell's cellular telephone device, referred to as TT4 in these proceedings. Defendant asks that the government be ordered to: (1) produce a "copy of the 'original' magneto-optical ("MO") disk, and/or disks presented to the district court judge for sealing … for TT4;" (2) allow defendant "to have a Computer Expert inspect the hard drive from the system and/or systems that created the file(s) for TT4;" and (3) produce a "copy of the logs the government investigative or law enforcement officers who conducted the monitor for TT4." (ECF No. 850 at 1-2.)

---

[2] The court presumes that the reader is familiar with this court's July 8, 2015 opinion.

According to defendant, this discovery is required because the CD produced to him by the government of the wiretap evidence from TT4 reflects a modification date of September 21, 2009, whereas the original MO disk was sealed by a district judge on September 14, 2009, which demonstrates that "the data has been tampered with outside the sealing date." (Id. at 3-4; ECF No. 859 at 1-2.) Defendant states that he needs to access the MO disk and the MO system hard drive "to compare" in order to prepare his defense. (ECF No. 850 at 3.)

The court held an evidentiary hearing on defendant's motion to compel on October 13, 2015. At the hearing, the government offered the testimony, by way of proffer with defendant's consent, of Special Agent Sandra Maier ("SA Maier"). (ECF No. 193 ¶¶ 3, 5-9, 12-15, 19.) Defendant cross-examined SA Maier. SA Maier is the lead FBI investigative agent on this case, has more than twenty years of experience as an FBI agent, and has participated in numerous investigations involving Title III wiretaps.[3] SA Maier testified at the prior evidentiary hearings on defendant's motions and the court relied upon her testimony in the July 8, 2015 opinion. (ECF No. 844 ¶¶ 37, 45(b), 47.) The court found SA Maier's testimony to be credible.

SA Maier explained that the compact disk ("CD") provided to defendant reflects a modification date of September 21, 2009 because the CD was created, or burned, on that date. SA Maier testified that the FBI's technical agents create wiretap CDs by copying the digital files associated with the particular Title III wiretap from the voice box computer. SA Maier explained that the FBI provides duplicate copies of the CDs to the government and defendant, both of which are burned from the voice box computer. SA Maier stated that the MO and voice box

---

[3] The transcript of the October 13, 2015 hearing has been ordered, but is not yet available. The following recitation of SA Maier's testimony is based upon contemporaneous notes taken by the court, and the court's independent recollection of the October 13, 2015 proceedings. Although the court notified defendant orally at the October 13, 2015 hearing that these motions would be denied, with trial approximately two weeks away, it is in the interests of justice to issue this opinion now, without citation to the transcript.

3

systems simultaneously intercept the same information and create identical copies of that information while the Title III wiretap is activated. SA Maier testified that the voice box computer, therefore, contains an identical, digital copy of the same information contained on the MO disk.[4] See also ECF No. 193 ¶¶ 8-9. The data contained on the MO system and the voice box computer includes the audio recordings of intercepted conversations, the date and time of the communication, the incoming and outgoing telephone numbers associated with the communication, and the session number. SA Maier testified that no delineation between PTT or traditional telephone communications is made by either the MO system or the voice box computer. The MO and the voice box computer will contain identical information for both kinds of communications.

        SA Maier explained that the MO system is not located in the wiretap room, where the FBI investigative agents are listening to the wiretap recordings and working on a case. SA Maier testified that the room where the MO system is located can only be accessed by the FBI's technical agents, whereas the voice box computer is located in the wiretap room and is accessible to, and used by, the FBI's investigative agents during a case. SA Maier confirmed, however, that the FBI agents cannot change the information about a communication on either the MO system or the voice box computer, with one exception. She explained that an agent can input and edit a synopsis of a recording at any time. The audio content of a communication, the date and time of the communication, the outgoing and incoming telephone numbers, and session numbers cannot be altered by the FBI agents. This information, likewise, will not be changed if a copy of the data is made. In other words, if a communication occurred on July 15, 2009, and the data associated with that communication was copied to a CD on October 13, 2015, although the CD

---

[4] In 2009, when the wiretap for TT4 occurred, the "MO disk" would have been more akin to a disk drive, instead of the compact disks, or CDs, that are currently used. (ECF No. 193 ¶ 15.) This is a distinction without a difference for purposes of resolving the present motion to compel.

will reflect a creation or modification date of October 13, 2015, the underlying data associated with that particular communication will still reflect that the communication occurred on July 15, 2009.

SA Maier testified that the day after a wiretap order expires, a technical FBI agent provides the MO disk to an FBI investigative agent, who presents the MO disk to a district judge for sealing, which in this case occurred on September 14, 2009. (ECF No. 193 ¶ 3.) Because the MO disk is promptly sealed by a district judge, when copies must be made of a Title III wiretap during the prosecution of a case, the FBI creates copies from the voice box computer's digital copy of the MO disk, not from the MO disk itself. SA Maier testified that in her experience copies are always made from the voice box computer, and not from the MO disk.

SA Maier, upon cross-examination, testified that the MO system and the voice box computer contain identical copies of all information about all communications intercepted during a wiretap. SA Maier based this testimony on her more than twenty years of experience as an FBI agent working on cases involving wiretaps, and upon information from and interactions with the FBI's technical agents. SA Maier explained that she has, in other cases, observed that the MO system and the voice box computer contain the same total number of calls for a wiretap, further corroborating her understanding of this fact.

Under Federal Rule of Criminal Procedure 16(1)(a)(E)(1), upon defendant's request, the government must permit defendant to inspect or copy any item within the government's possession, custody, or control that is "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(1). Materiality to the preparation of the defense within the meaning of this rule means "more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed

evidence would ... enable the defendant significantly to alter the quantum of proof in his favor." United States v. Maniktala, 934 F.2d 25, 29 (2d Cir. 1991); United States v. Buckley, 586 F.2d 498, 506 (5th Cir. 1978); United States v. Boffa, 89 F.R.D. 523, 535 (D. Del. 1981). In other words, materiality is based upon whether there is a reasonable probability that the production of the evidence would affect the outcome of the trial. United States v. Savage, No. 07-550-03, 2013 WL 420299, at *3 (E.D. Pa. Feb. 4, 2013) (citing United States v. Perdomo, 929 F.2d 967, 971 (3d Cir. 1991); United States v. Garcia, No. 99–064, 2001 WL 173784, at *2 n.8 (D. Del. Feb. 13, 2001)).

Defendant contends that the requested discovery is needed in order to demonstrate that the government altered the wiretap evidence in this case. In his written submissions, defendant's theory rested entirely on the fact that the original MO disk was sealed on September 14, 2009, but the CD produced to him by the government reflected a modification date of September 21, 2009. SA Maier provided credible, consistent, and clear testimony about why the dates differ. The CD provided to defendant was burned from the voice box computer, not from the MO disk, which is typical and inconsequential because the information on both systems is created contemporaneously and is identical. Faced with this uncontroverted testimony, at the hearing defendant challenged SA Maier with respect to whether the information on the voice box computer and the MO disk could possibly differ and whether the information on the CDs created on September 21, 2009 could have been possibly changed after the CD was burned but before it was delivered to defendant. Despite defendant's challenges, SA Maier provided sufficient testimony to refute each of defendant's new theories. SA Maier explained why and how she knew that the MO disk and the voice box computer contain identical information about a Title III wiretap, and indicated she would have no knowledge, experience, or reason to suspect that the

6

CDs were tampered with after they were created on September 21, 2009. The court notes that the record reflects that defendant received a copy of the wiretap CD on September 30, 2009, but defendant identifies no evidence that the data on that CD was changed between the date that it was created (September 21, 2009), and the date that he received it (September 30, 2009). (ECF No. 63.) To the contrary, defendant has maintained throughout these proceedings that the creation or modification date on the CD is September 21, 2009.

Defendant's motion must be denied because he made no showing of materiality. Proof that the government tampered with relevant wiretap evidence could certainly be material to a defendant's defense. Defendant made no showing, however, that such tampering occurred in this case. The September 21, 2009 date on defendant's CD is not probative of the misconduct alleged, for the reasons set forth above. The fact that the FBI burned CDs from the voice box computer, instead of from the MO disk, is not probative of the misconduct alleged, for the reasons set forth above. Defendant's belatedly asserted theory that the CDs could have been tampered with after they were burned by the FBI does not rise beyond mere speculation, and is contradicted by the record, for the reasons set forth above. It follows from these findings that there is no reasonable probability that production of the "original MO" and the hard drive from the MO system would affect the outcome of this case. Logs of the government agents who conducted the wiretap for TT4, likewise, would not be material. In any event, the FBI's line sheets, or rough transcripts or summaries, were included on the wiretap CD produced to defendant. (ECF No. 193 ¶ 19.) These line sheets list the initials of the individual who monitored a particular conversation, thus provided defendant with the functional equivalent of the logs he seeks.

Defendant failed to fulfill his burden of demonstrating that the discovery requested is material to preparing his defense. For this reason the motion to compel must be denied.

## II. **The Motion to Alter and Amend Judgment**

Although defendant filed a motion to alter and amend judgment, in the body of the brief he acknowledges that he is asking this court to reconsider its July 8, 2015 ruling. (ECF No. 852 at 1, 3-4.) "Motions for reconsideration may be filed in criminal cases." United States v. Fiorelli, 337 F.3d 282, 286 (3d Cir. 2003); see also United States v. Bennett, 514 F. App'x 151, 153-54 (3d Cir. 2013). The purpose of a motion to reconsider is "to correct manifest errors of law or fact or to present newly discovered evidence." Bootay v. KBR, Inc., 437 F. App'x 140, 146-47 (3d Cir. 2011) (citing Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). In order to be successful on a motion for reconsideration, the movant must demonstrate a "definite and firm conviction that a mistake has been committed," or that the court overlooked arguments that were previously made. United States v. Jasin, 292 F.Supp.2d 670, 676 (E.D. Pa. 2003). There are three circumstances in which a court may grant a motion for reconsideration: (1) there has been an intervening change in the law; (2) new evidence is now available that was not available when the court entered judgment; or (3) there is a need to correct a clear error of law or fact, or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 667 (3d Cir. 1999).

Defendant relies upon the third circumstance, arguing that the court committed manifest errors of law or fact by failing to find that defendant's PTT communications were illegally intercepted on July 13, 2009 and July 16, 2009, and that his location was illegally tracked on July 13, 2009. (ECF No. 852.) In support of his motion, defendant argues that PTT communications on these dates should appear on the Call Detail Records ("CDR") of TT4,[5] and on the pen/trap records for defendant's cellular telephone device.[6] (ECF No. 852 at 5-7.) Defendant contends that Government Exhibit 31, which was relied upon by the court as proof that defendant and Blackwell communicated multiple times on July 16, 2009 via their cellular telephone devices (a fact which defendant denied in the prior proceedings on his motions, and continues to deny), is contradicted by statements made by government agents in probable cause affidavits which indicate that more than 157 PTT communications took place on that day, while the government's exhibit reflects only 31 PTT communications. (Id. at 7-8.) Finally, defendant argues, summarily, that "[i]t's plain and beyond dispute" that he was using a second cellular telephone device on July 13, 2009, to communicate with Blackwell, who was also purportedly using a second cellular telephone device at the time, demonstrating that the government was illegally tracking him. (Id. at 8.)

---

[5] The traditional telephone number assigned to TT4 ended in -0259. (ECF No. 844 ¶¶ FOF 8, 28.)

[6] The traditional telephone number assigned to defendant's cellular telephone device ended in -2726. (ECF No. 844 ¶¶ FOF 8, 39.)

As the government correctly points out, motions for reconsideration are not designed to provide litigants with a "second bite at the apple." (ECF No. 856 ¶ 8 (citing Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995).) A motion for reconsideration is not to be used to relitigate, or "rehash," issues the court already decided, or to ask a district court to rethink a decision it, rightly or wrongly, already made. Williams v. City of Pittsburgh, 32 F.Supp.2d 236, 238 (W.D. Pa. 1998); Reich v. Compton, 834 F.Supp. 753, 755 (E.D. Pa. 1993), aff'd in part, rev'd in part, 57 F.3d 270 (3d Cir. 1995); Keyes v. Nat'l R.R. Passenger Corp., 766 F.Supp. 277, 280 (E.D. Pa. 1991). The majority of arguments raised by defendant in his motion for reconsideration were considered by the court in the July 8, 2015 opinion, which alone warrants denial of defendant's motion on those grounds. (ECF No. 844.)

Even if the court considered the merits of all arguments raised in defendant's motion, however, the result would remain the same. Before proceeding, it is necessary to summarize the court orders obtained by the government during its investigation of this case in order to provide necessary context. By July 8, 2009, the government was granted judicial authority to place a pen/trap with contemporaneous cell tower site location information on TT4, to intercept the content of conversations occurring on TT4 pursuant to Title III of The Omnibus Crime Control Act of 1968, 18 U.S.C. §§ 2510-2520, and to collect Blackwell's CDR. (ECF No. 844 ¶¶ FOF 21, 29, 32.) On July 15, 2009, the government was granted judicial authority to place a pen/trap with contemporaneous cell tower site location information on and to ping the cellular telephone device belonging to defendant. (ECF No. 844 ¶ FOF 40-41.)

In the prior proceedings on defendant's motions, defendant asserted that various discrepancies between the data reflected on the pen/trap records and the CDRs proved that the government illegally intercepted his PTT communications with Blackwell on July 13, 2009, and July 16, 2009. (ECF No. 844 ¶ FOF 44 (citing ECF No. 779 at 18-19; ECF No. 820 at 10-11).) Defendant advances the same arguments in support of his motion for reconsideration. (ECF No. 852 at 5-6.)[7] The court specifically rejected these arguments in the July 8, 2009 opinion. (ECF No. 844 ¶ FOF 44 (including all subparts), ¶¶ COL 41-43.) The court reasoning and conclusions need not be reproduced here.

In the prior proceedings on defendant's motions, defendant asserted that the failure of specific PTT communications to appear on defendant's and Blackwell's pen/trap records proved that the government illegally intercepted PTT communications on July 16, 2009. (ECF No. 844 ¶ FOF 44(c) (citing ECF No. 779 at 23, 31-32; ECF No. 820 at 12-17).) Defendant advances the same argument in support of his motion for reconsideration. (ECF No. 852 at 6-7.) The court specifically rejected this argument in the July 8, 2015 opinion, identifying where in the record particular conversations recounted in various probable cause affidavits appeared. (ECF No. 844 ¶ FOF 44(c) (including all subparts), ¶ COL 43.) In addition, the court found that the record contradicted defendant's fundamental premise that discrepancies in the pen/trap records indicated that the government was using an illegal cell site simulator or

---

[7] The import of defendant's argument about TT4 remaining in its home switch market on July 13, 2009, is unclear. To the extent defendant suggests illegality from the absence of any PTT communications for that date in the pen/trap records entered into evidence, the suggestion is contradicted by the record. The pen/trap on defendant's cellular telephone device was not judicially authorized until July 15, 2009. The pen/trap records entered into evidence for TT4 do not reflect any data before July 16, 2009. Under these circumstances, the absence of entries on July 13, 2009 is inconsequential. The court addressed this matter in the July 8, 2015 opinion. (ECF No. 844 ¶ FOF 44(c)(4); Def. Exs. S, U, V.)

digital analyzer to intercept communications without judicial authorization. (ECF No. 844 ¶ FOF 44(e), ¶ COL 40.) The court reasoning and conclusions need not be reproduced here.

Defendant's current argument about the discrepancy in the number of individual PTT communications that took place between defendant and Blackwell on July 16, 2009 is unsound for several reasons. (ECF No. 852 at 7-8.) First, the argument contradicts defendant's previous, and current, assertion that he never communicated with Blackwell on TT4 using PTT. Yet, in raising this alleged discrepancy, defendant must concede that "Gov. Ex. 31, for July 16, 2009, only reflects a of [sic] total 31 incoming/outgoing one-way communications on the pen/trap data between the Defendant and Blackwell." (Id. at 7.) Second, the argument could have been made during the prior proceedings on defendant's motions. All the evidence, including Government Exhibit 31, the probable cause affidavits, and the pen/trap data was available to defendant before this court issued the July 8, 2015 opinion. A motion for reconsideration is not to be used as a way to advance additional arguments that the litigant could have made, but chose not to make, sooner, or as an opportunity for a litigant, having lost, to change theories of the case and advance new, often contradictory, evidence in support. Bell v. City of Phila., 275 F. App'x 157, 160 (3d Cir. 2008); Spence v. City of Phila., 147 F.App'x 289, 291-92 (3d Cir. 2005); Bhatnagar, 52 F.3d at 1231; Trenton v. Scott Paper Co., 832 F.2d 806, 810 (3d Cir. 1987); Miller v. Court of Common Pleas of Erie Cnty., No. 12-206, 2014 WL 108585, at *2 (W.D. Pa. Jan. 10, 2014).

Putting these issues aside, defendant's argument is encompassed within those that he made about the purported inconsistencies between the pen/trap data and CDR records, and the government's alleged use of an illegal device to intercept his communications. (ECF No. 844 ¶ FOF 44(c)(3).) In the prior proceedings on defendant's motions, defendant argued that the government engaged in illegal conduct by tracking and intercepting communications between Blackwell and himself when they were using two different cellular telephone devices that were not subject to surveillance pursuant to court orders. As evidence of this illegal action, defendant alleged that he never engaged in PTT communications with Blackwell using TT4 (ECF No. 844 ¶ FOF 44(b) (citing ECF No. 779 at 5-6 & n.39, 16-17 & nn.124 & 127)), and that the government could only have known his whereabouts prior to obtaining a court order to track and ping his cellular telephone device by illegally surveilling his cellular telephones (ECF No. 844 ¶ FOF 44(f) (citing ECF No. 779 at 7).) Defendant advances the same arguments in support of his motion for reconsideration, but now contends that discrepancies between the number of one-way communications occurring on July 16, 2009 proves his theory. (ECF No. 852 at 7-8.) The court specifically rejected these arguments in the July 8, 2015 opinion. The court explained that the record directly contradicted defendant's claim that he did not engage in PTT communications with Blackwell using TT4 and reflected that the government gained knowledge about defendant's location prior to issuance of the July 15, 2009 pen/trap and ping order for his cellular telephone device by intercepting defendant's conversations with Blackwell pursuant to the Title III order on TT4, and conducting physical surveillance of defendant and his suspected co-conspirators. (ECF No. 844 ¶¶ FOF 44(b) and 44(f), ¶ COL 42.) Defendant identifies no reason, other than his disagreement with the court's ruling, for this court to reach a different conclusion now.

For the foregoing reasons, defendant's motion for reconsideration (ECF No. 852) must be denied.

### III. The Motion for Sanctions

About two weeks after defendant filed the above motion for reconsideration, he filed a motion for sanctions. (ECF No. 854.) In that motion, defendant contends that the government failed to produce "unchanged pen/trap data" and "photographic evidence" relating to the physical search of his tractor truck, as required by Federal Rule of Criminal Procedure 16, and this court's orders. (Id. at 1.) According to defendant, by "withholding and/or suppressing" this evidence, the government violated his due process rights, warranting dismissal of the indictment, or, at least, exclusion of the pen/trap and photographic evidence, and "any evidence that was derived therefrom." (Id. at 20, 22.) In addition to asserting that the government violated this court's orders, Rule 16, and his due process rights, defendant also accuses the government of violating its Brady obligations. (Id. at 6.)

In its succinct response, the government contends that defendant's motion is the equivalent of another motion for reconsideration in which defendant "simply reargu[es] matters that were already briefed, litigated, and carefully considered by this Court." (ECF No. 860 ¶ 12.) The government also argues that the motion is untimely, as the court set a deadline of August 6, 2015, for defendant to file any additional pretrial motions, and defendant did not place the instant motion in the mail until August 14, 2015. (Id. ¶¶ 5-7 & n.1.)

14

There is merit to the government's argument that this motion for sanctions was untimely filed. At the July 16, 2015 case management conference, the court scheduled this case for trial. The court assigned all available trial days in November to this matter after the government estimated that the trial would take one month. Because defendant expressed an intent to seek reconsideration of the court's ruling on his motions to dismiss the indictment or suppress evidence, the court built time into the schedule to permit such filings to be made, and ruled upon, before trial. As will be discussed below in more detail, the motion for sanctions raises the same challenges to the government's production of evidence and investigative conduct as defendant's prior motions did. Defendant's decision to caption the motion as one for sanctions, as opposed to one for reconsideration or to dismiss the indictment or to suppress evidence is inconsequential. All such motions were due August 6, 2015. Defendant missed that deadline by more than a week.

The court would typically not excuse such a delay, without explanation. However, in consideration of the Supreme Court's admonishment in Estelle v. Gamble, 429 U.S. 97 (1976), that this court liberally construe pro se pleadings, and its observations in Houston v. Lack, 487 U.S. 266 (1988), regarding the difficulties faced by incarcerated pro se litigants in ensuring that filings are timely mailed and docketed, the court finds, in this case, that the prudent course of action is to consider the merits of defendant's motion.

The legal standards applicable to defendant's request that this court dismiss the indictment or suppress evidence, pursuant to Rule 16, Brady, and the Due Process Clause, are set forth in this court's July 8, 2015 opinion. (ECF No. 844 ¶¶ COL 15-16, 24-28, 56-59.) The standards need not be repeated here because the court's disposition of defendant's motion does

not turn upon these legal principles.[8] The standard applicable to a motion for reconsideration is stated immediately above in Section II.

In the motion for sanctions, defendant contends that the government wrongfully withheld two categories of evidence that were material to the preparation of his defense: (1) a copy of the original, unchanged, pen/trap data; and (2) original photographic evidence regarding a photograph that defendant received through discovery in a related case pending in the United States District Court for the Northern District of Ohio. (ECF No. 854 at 7-8.) The court will separately consider each category of evidence.

### A. The Pen/Trap Data

According to defendant, the pen/trap evidence would prove that the government altered the data before producing it to him in discovery and was illegally tracking his movements by surveilling a second, unidentified cellular telephone device. (Id. at 8, 14-15.) To prove this assertion, defendant relies upon the facts that a) the government knew his whereabouts before obtaining a court order to track his cellular telephone device on July 15, 2009, b) the pen/trap data does not include entries for July 13, 2009 and does not match averments made in various probable cause affidavits about conversations occurring on July 13 and 16, 2009, c) his expert witness testified that the pen/trap data produced by the government was altered or incomplete, and d) the Sprint/Nextel witnesses did not recognize the format of the pen/trap data produced by

---

[8] The analysis in this court's July 8, 2015 opinion concerning dismissal of the indictment, pursuant to Rule 16, Brady, and the Due Process Clause, applies equally to defendant's present argument that suppression of evidence is warranted under these doctrines. (ECF No. 844 ¶¶ COL 56-60.) Likewise, the same analysis of defendant's arguments in favor of suppression of evidence in the July 8, 2015 opinion apply to defendant's present argument that suppression is warranted under Rule 16, Brady, and the Due Process Clause. (Id. ¶¶ COL 40-43, 48-52.) Any suggestion that a different result should be reached with respect to suppression of evidence under Rule 16, Brady, or the Due Process Clause than was reached under the legal standards directly applicable to defendant's motions to suppress the Title III recordings or the evidence obtained from searching defendant's tractor truck is without merit.

16

the government. (Id. at 3, 12-15.) Defendant raised all these arguments in the initial proceedings on his motions to dismiss or suppress, and the court addressed each in the July 8, 2015 opinion. (ECF No. 844 ¶ FOF 44 (including all subparts), ¶¶ COL 40, 42, 43, and 59.) The court addressed most of these arguments a second time in this opinion when ruling on defendant's motion for reconsideration. See supra Sec. II. The court need not address them a third time.

This court previously found that the record did not support a finding that the government altered pen/trap data before producing it to defendant or illegally surveilled a second, unidentified cellular telephone device. (ECF No. 844 ¶¶ FOF 44(a), (b), (f), ¶¶ COL 40, 42, 59.) Defendant asks this court to reach the opposite conclusion now, and to sanction the government as a result of its purported misconduct. There is no evidentiary or legal reason for this court to modify its prior ruling.

### B. The Photographic Evidence

According to defendant, the photographic evidence would prove either that the government searched his tractor truck before obtaining a search warrant, or that the government's evidence gathering methods were substandard. (ECF No. 844 at 4, 16-17.)[9] To prove this assertion, defendant relies upon the facts that a) there is no documentary support for the government's allegation that drugs were found when his tractor truck was searched on September 15, 2009, b) a photograph disclosed to defendant during discovery in a related case then pending in an Ohio District Court shows 42 kilograms of drugs on a table with the date "9/13/2009," and c) the government failed to produce the "original photographic evidence" so that his forensic expert could inspect it, despite repeated assurances that it would do so. (Id. at 15-17.) Defendant raised

---

[9] In the sanctions motion, defendant references the circumstances surrounding the government's seizure and unloading of his trailer. (ECF No. 854 at 4, 21-22.) He does not tie these circumstances to the allegedly withheld or destroyed photographic evidence about which he complains in the instant motion. Nevertheless, defendant raised these arguments previously, and the court ruled upon them in the July 8, 2015 opinion. (ECF No. 844 ¶ FOF 47.)

all these arguments in the initial proceedings on his motions to dismiss or suppress, and the court addressed each in the July 8, 2015 opinion. (ECF No. 844 ¶ FOF 50 (including all subparts), ¶¶ COL 48-50.) Defendant identifies no reason, other than his disagreement with the court's ruling, for this court to reach a different conclusion now.

This court previously found that the record did not support a finding that the government searched defendant's tractor truck on September 13, 2009, before obtaining a warrant, or acted wrongfully, recklessly, or wantonly in failing to preserve certain photographic evidence. (ECF No. 844 ¶ FOF 50 (including all subparts), ¶¶ COL 48-50.) Defendant asks this court to reach the opposite conclusion now, and to sanction the government as a result of its purported misconduct. There is no evidentiary or legal reason for this court to modify its prior ruling.

Turning to defendant's next argument, defendant fails to articulate how the original photographic evidence would prove that the government's evidence gathering methods were substandard, or even if it did, how that would warrant dismissal of the indictment or suppression of evidence. There is no factual dispute that the photographs from the Ohio case to which defendant refers were commemorative and not taken for evidentiary purposes. (ECF No. 844 ¶ FOF 50 (including all subparts).) Information about those photographs, therefore, could not be probative with respect to the government's evidence gathering techniques. Even if the photographs were probative in this regard, defendant provides no support for his assertion that such defects require dismissal of the indictment or suppression of evidence.

For the foregoing reasons, defendant's motion for sanctions (ECF No. 854) must be denied.

## IV. Conclusion

Defendant's motions challenge the government's surveillance of cellular telephone devices and search of defendant's tractor truck by raising the same arguments that defendant previously made in his motions to dismiss and suppress. Those motions were pending for years while defendant secured the assistance of expert witnesses and pursued the production of additional evidence, and this court held multiple hearings on defendant's claims. The court addressed each of defendant's myriad challenges to the government's investigation of this case in the July 8, 2015 opinion. Defendant identifies no reason for this court to reach a different result now. The motions must be denied. This case will proceed to trial.

An appropriate order will be entered contemporaneously with this opinion denying each of defendant's motions.

Dated: October 16, 2015                BY THE COURT:

/s/ *Joy Flowers Conti*
Joy Flowers Conti
Chief United States District Judge